.BURRILL et al. v. CROSSMAN et al.

(District Court, S. D. New York. October 21, 1901.)

ADMIRALTY—PLEADING—AMENDMENT.

Where respondents in a suit in admiralty pleaded a special defense, which they permitted to stand in the same form during the litigation of the case in the district court, the circuit court of appeals (where new pleadings were filed), and the supreme court, by each of which it was considered and adjudged insufficient, they will not be given leave to amend the answer so as to present such defense in a new form after the cause has been remanded for a retrial upon another issue.

In Admiralty. On motion for leave to amend answer.

Black & Kneeland, for libelants.

Wheeler & Cortis, for respondents.

ADAMS, District Judge. This action was brought in 1894, by the owners of the bark Kate Burrill, against the charterers thereof, to recover 53 days' allowance of demurrage for detention of the bark in the port of Rio de Janeiro, Brazil, in September, October, and November, 1893. The bark was chartered in March, 1893, to carry a load of lumber to Rio. On the voyage out she lost a portion of the cargo by perils of the sea, and delivered the remainder during the said months. The answer to the libel, after some general denials, set up affirmatively, in the fourth article, that, under a cesser of liability clause contained in the charter, there was no liability on the part of the respondents; and, further, in the fifth article, that, owing to a state of war which prevailed in Brazil at the time, it was impossible to remove the cargo from the vessel any sooner than it was removed. Exceptions were filed to the answer by the libelants, to the general effect that the respondents had not answered fully and distinctly, and, further, to the sufficiency of the fourth

article, which set up the cesser clause, and to the fifth article, which set up vis major by reason of the state of war mentioned. The fourth and fifth, subsequently, in an amended answer, became the fifth and sixth articles. After lengthy proceedings in this court, the exception to the original fourth article was sustained, and the exception to the original fifth article was overruled. The libelants thereupon moved for leave to withdraw the exception to the original fifth article of the answer, and to amend the libel so as to confess and avoid and explain the new matter set forth in that article of the answer. This motion was denied, and, after some testimony was taken, the libel was dismissed, with costs. 65 Fed. 104. The libelants then appealed to the circuit court of appeals, and assigned as error the overruling of their exception to the said fifth article of the answer, in denying libelants' motion for leave to withdraw the said exception, and in dismissing the libel. The libelants then moved in the court of appeals for leave to amend the libel in the manner moved for in this court, which motion was granted. An amended libel was then filed, which, in addition to the allegations in the original libel, alleged certain facts with respect to the anchorage of the vessel at Rio, her discharge there, proceedings touching an account, and want of authority on the part of any one there to enter into an accord and satisfaction of the demurrage in question. An answer was filed to this libel, substantially denying its allegations, and again setting up, in the fourteenth and fifteenth articles, the matters of cesser and war difficulties, which were the subjects of the fourth and fifth articles of the original answer. The answer, in the sixteenth article, also set up an accord and satisfaction, which the libelants had anticipated and denied. The libelants thereupon excepted, inter alia, to the fourteenth, fifteenth, and sixteenth articles of the answer, on the ground that they were insufficient in law to constitute a defense. The exception to the fourteenth article (original fourth) of the answer was sustained, the opinion of the district judge being adopted as a satisfactory discussion of the question involved. The exception to the fifteenth article was also sustained; and the exception to the sixteenth article overruled. 16 C. C. A. 381, 69 Fed. 747. Testimony by depositions in Brazil and New York was taken, and a decree was subsequently directed to be entered in the district court in favor of the libelants for the sum of $3,151, with costs. 33 C. C. A. 663, 91 Fed. 543. A writ of certiorari was then applied for by the respondents, and issued by the supreme court, to review the said decree of the circuit court of appeals. It was there determined (179 U.. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106) that the decisions below sustaining the exception to the article of the answer setting up the cesser clause of the charter party as a defense were correct. It was also held that the questions of accord and satisfaction were rightfully determined below, on conflicting evidence. The decree, however, was reversed, on the ground that it was error to sustain the exception to the defense of state of war in Brazil or vis major, and the cause was remanded to this court for further proceedings in conformity with the opinion rendered.

111 F.—13

The cause is now again in this court, and the respondents move for leave to amend their amended answer, filed in the circuit court of appeals, by substituting a new "fourteenth" article.

The article in question reads as follows:

"Fourteenth. And, further answering, the respondent alleges that the charter party referred to in the libel herein contained a clause providing that the vessel should have an absolute lien upon the cargo for freight and demurrage, and that the charterers' responsibility should cease upon the loading of the cargo and signing of the bills of lading; that said vessel was fully laden, as alleged in the fourth article of the libel herein; and that thereafter, and long prior to the said 4th day of September, 1893 (the date upon which it is alleged in the fifth article of said libel that notice in writing was given to the agents of the respondents at Rio Janeiro that said vessel was ready to discharge her cargo), bills of lading of similar tenor for the whole of said cargo were duly signed by the master of said vessel, a copy of one of which is annexed hereto and made part hereof, and said bills of lading were duly assigned and delivered to the Companhia Industrial do Brazil, and by them assigned and delivered to Messrs. Manoel da Cruz & Filho, who thereby became the consignees of said cargo; and that thereupon all liability of these respondents to the owners of said vessel under said charter party ceased, and it became the duty of the master and owner of said vessel, upon the failure, alleged in the fifth article of said libel, of the consignees of said cargo to discharge the same at the agreed rate per day, to notify said consignee of the amount of the demurrage claimed by reason of said failure, and to hold said cargo until the same should have been paid, in accordance with the terms of the charter party."

The proposed new article reads as follows:

"Fourteenth. And, further answering, respondents allege that the charter party referred to in the libel herein contained a clause providing that the vessel should have an absolute lien upon the cargo for freight, dead freight, and demurrage, and that the charterers' responsibility should cease upon the loading of the cargo and signing of the bills of lading; that said vessel was fully laden, as alleged in the fourth article of the libel herein; and that thereafter, and long prior to the said 4th day of September, 1893 (the date upon which it is alleged in the fifth article of said libel that notice in writing was given to the agents of the respondents at Rio Janeiro that said vessel was ready to discharge her cargo), bills of lading of similar tenor for the whole of said cargo were duly signed by the master of said vessel, and said bills of lading were duly assigned and delivered to the Companhia Industrial do Brazil, which company was the owner of the lumber mentioned in said bills of lading, and had purchased the same from the respondents before the charter was made, and in December, 1892. Such charter was effected for the purpose of transporting said cargo of lumber from Pensacola to Rio Janeiro. The whole purpose of the issue of said bills of lading was to enable respondents to attach them, or one of them, to a draft for the purchase price of said lumber, which was drawn against a letter of credit issued by Jacob Walter & Co., of London, in favor of said Companhia Industrial do Brazil. Said draft was paid to respondents, and the lumber was delivered in Rio Janeiro to the purchaser thereof, said Companhia Industrial do Brazil, or to its order; and the function of said bills of lading was thereupon fully performed, and said Companhia Industrial do Brazil, or its vendee or agent, received the said lumber,—not by virtue of said bills of lading, but pursuant to said charter party and the consignment of said lumber to it."

The contention on the part of the respondents is that it appears by an expression in the opinion of the supreme court (page 109, 179 U. S., page 41, 21 Sup. Ct., and page 111, 45 L. Ed.) to the effect that, because it was not pleaded in the case that the indorsees of the bills of lading were the persons who had originally authorized

the chartering of the vessel, such point was not considered there, and that the real merits of the cesser defense have not been considered at all. It appears that testimony concerning this matter was given in this court on behalf of the respondents, which the respondents admit fully covers their present point, so that no further testimony is required by them. The libelants contend that such testimony was considered by the different courts through which the cause has been litigated, and that there is no merit in the application. The several decisions upon the exceptions to the clause in question, without mention of the testimony, would seem in some degree to negative the libelants' position, but I do not consider it necessary to decide this controversy. It is certain that the respondents have relied upon the form in which they presented the question of liability under the cesser clause through all the courts, and it does not seem to me that in this stage of the litigation the door should be opened to further dispute in such respect. The supreme court evidently considered that its decision settled all the questions in the case excepting the defense of vis major, which is now in this court to be determined.

The motion is denied.